OPINION
Defendants-appellants the City of Delaware and the Administrator of the Bureau of Workers' Compensation (hereinafter, collectively, "appellants" and individually, "the City" and/or "the Administrator") appeal the April 14, 1999 Judgment Entry on Verdict entered by the Delaware County Court of Common Pleas, which memorialized the jury's verdict finding in favor of plaintiff-appellee Steven M. Flahive, and specifically finding appellee is entitled to participate in the Ohio Workers' Compensation Fund.
 STATEMENT OF THE CASE AND FACTS
At all times relevant to the instant action, appellee was employed as a firefighter with the City. In 1991, appellee experienced his first episode of chest pain. After suffering episodes of more severe chest pain in 1993, appellee sought treatment from Dr. Nardin, his family physician, who determined appellee needed to undergo a heart catherization. Appellee ultimately underwent emergency quadruple bypass surgery due to complications arising during the heart catherization. Appellee's treating physician released him to return to work full-time in November, 1993. In September and October, 1994, appellee developed chest pain and some shortness of breath. Dr. Nardin referred appellee to Grady Memorial Hospital for an echocardiogram and a stress test. In accordance with Dr. Nardin's referral, appellee underwent a "rest/stress cardiolite myocardial scan" on November 8, 1994. The test revealed "no convincing evidence of infarction or ischemia". At approximately 2:00 a.m. on September 5, 1995, appellee presented himself to the emergency room at Grady Memorial Hospital with complaints of severe chest pain. An electrocardiogram and serum enzymes test performed in the emergency room were normal, however, appellee was admitted for further testing to rule out myocardial infarction. The results of a PA and lateral chest test noted, "no acute abnormality is seen". During this admission, appellee was observed in a cardiac bed for twenty-four hours, which revealed no evidence of cardiac damage. On September 8, 1995, appellee underwent an upper endoscopy procedure, from which he was diagnosed with a hiatus hernia which can cause chest pain. While on duty the morning of January 5, 1996, appellee responded to a fire on Frank Street, in Delaware, Ohio. Appellee arrived at the scene in full turnout gear: a helmet, turnout coat, boots, suspendered pants, a hood, a mask, and an air bottle. Appellee exited the fire truck and jogged approximately 100 feet to the front door of the burning building. Although appellee noticed he was experiencing chest pains, he reported to his captain who instructed appellee to locate the electrical panel and to shut off the electricity. Appellee completed that task and proceeded to a first floor bathroom/laundry room where he assisted in extinguishing the fire and removing debris. Appellee reported his chest pains and shortness of breath to his captain, who advised him to return to the fire station. On route back to the fire station, appellee took two nitroglycerine tablets in an attempt to relieve the symptoms. When he took nitroglycerine in the past, such medication alleviated his symptoms. However, on this day, the medicine failed and the symptoms persisted. Upon returning to the fire station, appellee proceeded to the emergency room at Grady Memorial Hospital. Emergency room personnel administered two additional nitroglycerine tablets, which also failed to relieve the pain and pressure in appellee's chest. Thereafter, the staff placed him on a nitroglycerine drip, which eventually relieved the pain. Appellee was admitted into the intensive care unit for observation. Appellee was released the following morning and was advised not to return to work until further tests were performed. Dr. Nardin contacted Dr. Schaal at the Ohio State University Hospital and made arrangements for the appropriate testing. Upon completion of the tests, Dr. Nardin advised appellee not to return to work as a firefighter. Appellee was placed on heart medication, which he continues to take on a daily basis. Dr. Nardin referred appellee to Drs. Rolfe and Frazier. In a July 7, 1997 correspondence, Dr. Rolfe informed appellee his "recent stress echocardiogram looked quite good". The doctor noted, "[t]here was evidence of a very, very minimal amount of heart damage at the time you went off to your emergency surgery, [the 1993 bypass] but even with that your heart still pumps a completely normal amount of blood with each beat while you're resting". The doctor continued, "[t]here was no evidence on this stress test either from the echo pictures, the electrocardiogram during the test or symptoms that you have any blockages of significance in your arteries right now". In September, 1997, appellee saw Dr. Jessica Ross for a second opinion. Subsequent to the January 5, 1996 incident, appellee filed an application for compensation and medical benefits with the Bureau of Workers' Compensation. In an order dated May 15, 1996, the Administrator allowed appellee's claim for the condition of "intermediate coronary syndrome." The City filed an appeal to the Industrial Commission of Ohio. On August 26, 1996, the District Hearing Officer conducted a hearing, after which he denied the City's appeal and affirmed the Administrator's decision modifying the allowed condition to "aggravation of pre-existing coronary artery disease". The City further appealed to the Industrial Commission Staff Hearing Officer. After conducting a hearing on October 9, 1996, the Staff Hearing Officer granted the City's appeal and vacated the August 26, 1996 Order of the District Hearing Officer; thereby, disallowing appellee's claim in its entirety. Appellee's request for further appeal was denied. On June 26, 1998, appellee filed a Notice of Appeal and Petition in the Delaware County Court of Common Pleas. The matter proceeded to jury trial on April 12, 1999. After hearing all the evidence and deliberations, the jury returned a unanimous verdict in favor appellee, the trial court memorialized in a Judgment Entry on Verdict filed April 14, 1999. It is from this judgment entry appellants appeal, raising the following assignments of error:
I. THE TRIAL COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT TO THE DEFENDANTS, FOR THE REASON THAT, IN THE ABSENCE OF A SEPARATE AND DISTINCT INJURY, AGGRAVATION, CAUSED BY EMPLOYMENT, OF A PRE-EXISTING DISEASE IS NOT COMPENSABLE.
II. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE PLAINTIFF'S EXHIBIT NO. 1, THE "PRELIMINARY STRESS ECHO REPORT," AS WELL AS THE UNSIGNED "FINALIZED REPORT", CONTAINED IN PLAINTIFF'S EXHIBIT 8, BECAUSE THESE DOCUMENTS WERE NOT ADMISSIBLE IN EVIDENCE UNDER ANY EXCEPTION TO THE HEARSAY RULE.
III. THE TRIAL COURT ERRED BY FAILING TO EXCLUDE THE OPINION TESTIMONY OF DR. ROSS, BECAUSE IT WAS BASED UPON A DOCUMENT — PLAINTIFF'S EXHIBIT NO. 1 — THAT WAS NOT ADMISSIBLE.
IV. THE TRIAL COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT FOR THE DEFENDANTS, FOR THE REASON THAT THE PLAINTIFF FAILED TO ESTABLISH THAT HIS ALLEGED "AGGRAVATION OF PRE-EXISTING CORONARY ARTERY DISEASE" WAS PROXIMATELY CAUSED BY HIS EMPLOYMENT.
V. THE TRIAL COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT FOR THE DEFENDANTS, AS ANGINA AND ISCHEMIA ARE MERE SYMPTOMS OF UNDERLYING CORONARY ARTRY [SIC] DISEASE, AND SYMPTOMS ARE NOT COMPENSABLE.
Any other facts relevant to our discussion of appellants' assignments of error shall be contained therein.
 I
In their first assignment of error, appellants maintain the trial court erred in failing to grant their motion for a directed verdict at the close of appellee's case because an aggravation of a pre-existing disease is not compensable under the workers' compensation laws in the absence of a separate and distinct injury, which appellee did not establish The standard of review for the grant or denial of a motion for directed verdict is: whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172. In support of their assertion the trial court should have granted a directed verdict in their favor because the aggravation of a pre-existing disease is not compensable, appellants rely on Brody v. Mihm (1995), 72 Ohio St.3d 81
. We find appellants have misinterpreted Brody. In Brody, the Ohio Supreme Court reviewed a number of its previous decisions regarding compensation for the aggravation of a pre-existing disease or injury. The Brody Court noted, "claims for aggravation of a pre-existing disease are compensable only where the aggravation itself qualifies as a compensable injury or occupational disease." Id. at 83 (Emphasis added). The claimant in Brody was a dentist who filed an occupational disease claim with the Industrial Commission of Ohio, alleging his pre-existing arthritic condition was aggravated by his employment which required him to constantly stand "in a forward bent and twisted position as [he] worked on [his] patients." Id. at 81. After his claim was denied administratively, the claimant appealed to the Stark County Court of Common Pleas, which also found he was not entitled to participate in the State Insurance Fund. Id. This Court affirmed the trial court, finding "the aggravation of a pre-existing condition is not compensable when the cause of the aggravation is not itself an occupational disease." Id. at 81-82. The Ohio Supreme Court, which likewise found the claimant was precluded from receiving compensation, noted "[t]he ordinary physical stresses and strains of [his] dental practice, as a matter of law, are no greater than those which are encountered in ordinary non-employment life." Id. at 84. The Brody Court reasoned, "[e]ven if we were to hold compensable a claim for wear-and-tear aggravation of a non-occupational disease, the claimant would have to show that the employment contribution is legally, as well as medically, sufficient to give rise to a compensable disability." Id. at 83 (Citations omitted). "This would require a showing that the work place exertion or cumulative work place exertions are greater than those encountered in ordinary non-employment life." Id. at 84. (Citations omitted). We find the ordinary physical stresses and strains of appellee's employment as a firefighter are, as a matter of law, greater than those encountered in ordinary non-employment life. The record reveals, the temperature on the morning of the incident was approximately 10 degrees Fahrenheit. Appellee arrived at the scene of a fire, dismounted the fire truck, and jogged approximately 100 feet into the burning building. Appellee was clothed in full turnout gear, including a helmet, turnout coat, boots, suspendered pants, a mask, a hood, and an air bottle. The jury was given the opportunity to feel the weight of this equipment. The general population does not wear such heavy protective gear and apparatus in ordinary non-employment life. Additionally, during her trial deposition, Dr. Jessica Ross expressly testified, the aggravation of appellee's coronary artery disease had worsened as a result of the January 5, 1996 injury and the ischemia suffered by appellee was a direct result of that injury.
 Q. [Thomas Tootle, Counsel for Appellee]: Was there a worsening — in your opinion, was there a worsening of Mr. Flahive's condition after that January 5th, 1996, [sic] incident?
MR. McDONALD [Counsel for the Administrator]: Objection.
 A. There was a worsening of his condition, yes, on January 5th, 1996 * * *
* * *
 Q. [Attorney McDonald] . . . Isn't it true that he had anginal symptoms intermittently after his coronary artery bypass surgery through January of 1995?
 A. There is no documentation that any chest pain that Mr. Flahive had could be diagnostically categorized as angina because of the fact that the testing between 1993[,] and 1996 [,] did not document ischemia. It was chest pain on January 5th, 1996, with a follow-up stress echo [test] that demonstrated wall motion abnormalities that makes the diagnosis of ischemia for the first time in Mr. Flahive's records since 1993.
Videotaped Deposition of Jessica Ross, M.D. at pp. 27 and 40. Construing this evidence most strongly in favor of appellee, we find the trial court properly denied appellants' motion for directed verdict as reasonable minds could reach different conclusions as to essential elements of the case. Appellants' first assignment of error is overruled.
 II
In their second assignment of error, appellants contend the trial court erred in admitting appellee's Exhibit No. 1, the preliminary stress echo report, and Exhibit No. 8, the finalized report. Appellants submit these documents are hearsay and do not fall within any of the exceptions to the hearsay rule. In their brief to this Court, appellants argue Exhibit No. 1 is inadmissible because it was an unsigned, preliminary report. However, upon review of the record, we find appellants did not object to the admission of Exhibit No. 1 on this ground. Evid.R. 103(A)(1) specifically provides: (A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.
Having failed to object to Exhibit No. 1 due to the lack of signature, appellants have waived their right to raise this issue on appeal. Turning to the admission of Exhibit No. 8, we noted although appellants objected to the admission of said exhibit, the record indicates such objection was based upon an assertion the preliminary report and the final report were significantly different. The trial court overruled the objection finding appellants' trial counsel could argue those differences to the jury. Because the basis of appellants' objection went to the credibility of the evidence, rather than the admissibility, we find the trial court did not abuse its discretion in overruling the objection and admitting the evidence. Appellants' second assignment of error is overruled.
 III
In their third assignment of error, appellants argue the trial court erred in failing to exclude the opinion testimony of Dr. Jessica Ross as said testimony was based upon Exhibit No. 1, an inadmissible document. Appellants explain Dr. Ross did not refer to or even see Exhibit No. 8, the finalized report, in evaluating appellee. Rather, Dr. Ross only referred to the preliminary report in reaching her opinion. Having found no error in the admissibility of the preliminary report, we find the trial court did not err in admitting Dr. Ross' opinion testimony based thereon. Appellants' third assignment of error is overruled.
 IV
In their fourth assignment of error, appellants assert the trial court erred in failing to grant a directed verdict in their favor because appellee failed to establish the alleged "aggravation of pre-existing coronary artery disease" was proximately caused by his employment as a firefighter. The standard of review for the review for the grant or denial of a motion for directed verdict is set forth supra. Upon review of the record, we find appellee provided sufficient evidence of causation to overcome a motion for directed verdict. During her trial deposition, Dr. Ross testified as follows:
 Q. [Attorney Tootle] . . . Based upon your examination of Mr. Flahive as well as his history, do you have an opinion as to a reasonable degree of medical certainty and probability as to the relationship between Mr. Flahive's coronary artery disease and the incident that occurred on January 5th, 1996?
MR. McDONALD: Objection.
A. Yes.
Q. What is that opinion?
* * *
 A. The opinion I have after reviewing the information is that the incident on January 5th, 1996, was an aggravation of existing coronary artery disease.
* * *
 * * * The record shows and there is an error on which I didn't notice in the transaction in January of 1995. It should be 1996. The patient was on duty exerting himself with conditions not ideal for the patient with coronary artery disease . . . The record now shows the test in February of 1996, anginal symptoms or chest pain symptoms need documentation of ischemia [which] often times [requires] more than an EKG, with sophisticated test such as the stress echocardiagram test. And that is the first documentation [of ischemia] that I see in the record, and it's on February 2nd, 1996.
Ross Deposition at 22, 42-43.
Appellee's trial testimony likewise provides evidence from which the jury could infer the work-related nature of his condition:
 Q. [Attorney Tootle]: When was it that you first noticed that you were having problems with your heart?
 A. That morning I notice when I got inside the building, went in the front door, jogged up, I walked over the captain, asked him what needed to be done.
 Q. You said you walked into the building, which building are you referring to?
A. Building on fire, the house that was on fire that morning.
 Q. When was the first moment that you realized that you were experiencing symptoms; what were you doing at the time?
 A. I was checking with the captain, I slowed down from jogging and went in the front door, walked over to the captain, asked him what to do. I felt this ache, this dullness, pressure in my chest.
T., Vol. I at 120-121.
Construing this evidence most favorably in light of appellee, we find the trial court did not err in denying appellants' motion for directed verdict as to causation. Appellants' fourth assignment of error is overruled.
 V
In their final assignment of error, appellants claim the trial court erred in denying their motion for directed verdict as appellee only presented evidence of his symptoms, angina and ischemia, and symptoms are not compensable. Upon review of appellants' oral motion for directed verdict made at the close of appellee's case-in-chief, we find appellants never raised this issue as grounds for the motion. As a general rule, a litigant who has the opportunity to raise an issue in the trial court, but fails to do so, waives the right to raise that issue on appeal. Belvedere Condominiums Unit Owners' Ass'n v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 279. Because appellants failed to raise this issue to the trial court, we need not address this assignment of error. Appellants' final assignment of error is overruled.
The judgment of the Delaware County Court of Common Pleas is affirmed.
 _______________ READER, V.J.
By: Reader, V.J. Hoffman, J. and Wise, J. concur (Retired from the Fifth Appellate District, Sitting by Supreme Court Assignment).